IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

MARGARET M. ICE, )
)
    Plaintiff, )
)
vs. ) Case No. CIV-16-1097-D
)
STATE OF OKLAHOMA *ex rel.* )
OKLAHOMA DEPARTMENT OF )
CONSUMER CREDIT, *et al.*, )
)
    Defendants. )

# **O R D E R**

Before the Court are Defendant State of Oklahoma's Motion to Dismiss [Doc. No. 6] and Defendant Scott Lesher's Motion to Dismiss [Doc. No. 5], filed pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).[1] The Motions primarily challenge the sufficiency of Plaintiff's pleading to state: race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*. (Count I) and 42 U.S.C. § 1981 (Count II); a religious discrimination claim under Title VII (Count III); an age discrimination claim under Oklahoma's Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 25, § 1301 *et seq*. (Count IV);[2] a First Amendment retaliation claim under 42 U.S.C.

---

[1] Defendants also moved for dismissal due to insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). Plaintiff subsequently perfected service, and Defendants concede this aspect of their Motions is moot. *See* Def. Lesher's Reply Br. [Doc. No. 16] at 9; Def. State's Reply Br. [Doc. No. 17] at 9.

[2] Plaintiff refers to the statute in her pleading and briefs as the "Oklahoma Discrimination in Employment Act" and the "ODEA." *See* Pet. [Doc. No. 1-2], ¶¶ 4, 41; Pl.'s Resp. Br. [Doc. No. 15] at 17. The Court utilizes a more commonly used name for the statute.

§ 1983 (Count V); and tort claims of interference with a contractual relationship and with prospective economic advantage (Counts VI and VII). The State also challenges Plaintiff's ability to pursue a "*Burk* tort" claim[3] of wrongful discharge in violation of public policy (Count VIII), in light of remedies provided by the Whistleblower Act, Okla. Stat. tit. 74, § 840-2.5. Defendant Lesher also raises issues regarding sovereign immunity from suit under the Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, § 151 *et seq.*; and qualified immunity under federal law. Plaintiff has filed responses [Doc. Nos. 14 & 15] to the Motions, and Defendants have replied [Doc. Nos. 16 & 17].

**Factual Background**

Plaintiff is a former employee of Defendant Oklahoma Department of Consumer Credit (the "Department"), who is Hispanic, Catholic, and over 40 years of age. She claims she was terminated as chief examiner of the Department on March 30, 2015, based on her race or national origin, age, and opposition to unlawful employment practices. Plaintiff alleges the termination decision was made by the Department's executive director, Defendant Scott Lesher, who had made derogatory remarks about Native American and Hispanic employees and said he preferred younger workers in management positions. Plaintiff alleges Mr. Lesher terminated her within weeks after she complained to him about his use of racial slurs and after she questioned him about a young female employee who appeared to be receiving preferential treatment and full-time pay for part-time work. Plaintiff was replaced by a white male employee who was younger than 40 years of age.

---

[3] *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989).

Plaintiff also provides facts to establish her exhaustion of administrative remedies with the EEOC, her compliance with the GTCA's notice requirements, and her timely suit following the receipt of an EEOC notice of a right to sue and the denial of her tort claim.

**Standard of Decision**

"Motions to dismiss for lack of subject matter jurisdiction 'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.'" *City of Albuquerque v. United States Dep't of Interior*, 379 F. 3d 901, 906 (10th Cir. 2004) (citing *Ruiz v. McDonnell*, 299 F. 3d 1173, 1180 (10th Cir. 2002)). In this case, Defendant Lesher challenges only the sufficiency of Plaintiff's factual allegations to overcome sovereign immunity.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing plausibility, the Court first disregards conclusory allegations and "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility

3

of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## Discussion

### A.  Sovereign Immunity

The GTCA authorizes suit against the State or its departments based on conduct of employees "acting within the scope of their employment," that is, "in good faith within the duties of the employee's office or employment." Okla. Stat. tit. 51, §§ 152(12), 153(A). The GTCA immunizes an individual state employee from liability and suit for conduct within the scope of his employment. *See* Okla. Stat. tit. 51, § 153(B), (C). Defendant Lesher asserts his immunity from suit under the GTCA regarding Plaintiff's state-law tort claims of interference with her employment relationship and a prospective economic advantage of continued employment by the Department. Because the alleged torts are based solely on Defendant Lesher's termination of Plaintiff's employment with the Department, he contends the allegedly tortious conduct necessarily occurred within the scope of his job duties. As discussed *infra*, however, these tort claims can be brought against Defendant Lesher only if he was <u>not</u> acting as an agent of the Department. Thus, if Plaintiff's pleading sufficiently states the type of tort claim asserted, a suit against Defendant Lesher outside of the protection of the GTCA is available. *See id*. § 153(C) (employee "may be named as defendant under alternative allegations that such person did not act within the scope of employment").

**B.     Racial Discrimination and Retaliation Claims**

Plaintiff asserts claims of racial discrimination and retaliation against the Department under Title VII and against Defendant Lesher under 42 U.S.C. § 1981 based on factual allegations common to both claims. Defendants contend Plaintiff's allegations are insufficient to state a claim on which relief can be granted under Title VII or § 1981.[4] Under the circumstances, the elements required to prove a claim under Title VII and § 1981 are the same. *See Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011); *Carney v. City of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).

The Tenth Circuit has stated regarding Title VII claims that "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Accordingly, the Court will look at the elements of each of Plaintiff's claims in determining whether she has pled a plausible claim for relief.

---

[4] Defendant Lesher also frames the issue as whether Plaintiff's allegations are sufficient to overcome his qualified immunity from suit under federal law. "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). There is no question that Plaintiff's right not be discharged from employment based on her race or in retaliation for opposing racial discrimination was clearly established. *See CBOS West, Inc. v. Humphries*, 128 S. Ct. 1951 (2008) (retaliation); *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1244 (10th Cir. 2000) (discrimination). The real question is whether Plaintiff's factual allegations show a violation of this right.

A plaintiff establishes a *prima facie* case of racial discrimination in a termination of employment "by showing that: (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge." *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999); *see Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000). However, "the fourth element of a prima facie case is a flexible one that can be satisfied differently in varying scenarios." *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) "'The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* (quoting *Kendrick*, 220 F.3d at 1227) (internal quotation omitted); *see Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 & n.8 (10th Cir. 2007).

Regarding race-based retaliation, the court of appeals has held: "'To state a prima facie case of retaliation, [a plaintiff] must show that: (1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.'" *Carney*, 534 F.3d at 1276 (quoting *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1171 (10th Cir. 2006) (footnote omitted)). The first element is satisfied by showing the plaintiff "engaged in protected opposition to discrimination." *Kendrick*, 220 F.3d at 1234; *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1103 (10th Cir. 1998). Protected conduct encompasses opposition based on a reasonable, good faith belief that the

underlying conduct constituted racial discrimination. *See Crumpacker v. Kansas Dep't of Human Serv.*, 338 F.3d 1163, 1171 (10th Cir. 2003); *see also Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 385 (10th Cir. 1984). To qualify as protected conduct, "the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII or § 1981]." *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *see Peterson v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

Upon careful consideration of Plaintiff's pleading, the Court finds that it contains sufficient factual allegations, although barely, to state plausible race-based discrimination and retaliation claims against Defendants. The allegations of Plaintiff's pleading, which are accepted as true, state facts to show Defendant Lesher made the decision to terminate Plaintiff's employment with the Department. Plaintiff alleges facts from which to infer the decision was motivated by his racial animus toward Native Americans and Hispanics and by retaliation for Plaintiff's internal complaint about Defendant Lesher's racially derogatory remarks toward these minority groups.[5] Plaintiff's pleading "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" as required by Rule 8(a). *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also Khalik*, 671 F.3d at 1193. Therefore, the Court finds that Plaintiff states plausible claims against Defendants in Counts I and II of her pleading that

---

[5] In reaching this conclusion, the Court has disregarded Plaintiff's conclusory, formulaic recitation of the elements of a *prima facie* case of discrimination and has relied on factual allegations of circumstances from which unlawful discrimination could reasonably be inferred.

7

she was terminated based on her Hispanic race or national origin, and her opposition to racial discrimination.

**C.     Religious Discrimination**

Like Plaintiff's claims of race-based discrimination and retaliation, and a claim of age discrimination discussed *infra*, Plaintiff asserts in Count III of her pleading that the Department terminated her employment based on her religion and opposition to religious discrimination. The Department correctly contends, however, that Plaintiff's pleading contains no factual allegations from which to infer that religion played any part in the decision to terminate her employment.[6] Plaintiff does not allege any facts that suggest a causal connection between a conversation about religion in November 2014 and the termination of her employment over four months later. *See Meiners v. Univ. of Kans.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (temporal proximity of three months is insufficient to show causation); *see also Lauck v. Campell Cty.*, 627 F.3d 805, 815-16 (10th Cir. 2010) ("We have repeatedly held that one cannot infer causation from temporal proximity alone when the time lapse between the protected activity and the retaliatory act exceeds three months.") (collecting cases).

Lacking any adverse action that would support a religious discrimination or retaliation claim, Plaintiff asserts that she has stated a plausible claim of religious

---

[6] Plaintiff's pleading also contain no factual allegations to show she engaged in protected opposition to religious discrimination, as required to state a religion-based retaliation claim. Plaintiff states only that she was offended by Defendant Lesher's comments about her faith and told him "she did not want to have this discussion with him." *See* Pet. [Doc. No. 1-2], ¶ 12.

8

harassment creating a hostile work environment. This claim is based on her conversation with Defendant Lesher in which he allegedly made offensive statements about Catholicism, including that Plaintiff worshiped relics. *See* Pet. [Doc. No. 1-2], ¶ 12. In support of this claim, Plaintiff argues that a single, severe incident of verbal harassment – combined with other discriminatory harassment, such as racial hostility – may be sufficient to state a plausible claim under the totality of circumstances approach applied to determine a hostile work environment. *See* Pl.'s Resp. Br. [Doc. No. 15] at 10-11. Plaintiff also argues that it would be premature to determine at the pleading stage whether the alleged circumstances were severe or pervasive enough to create a hostile work environment. *See id*. at 11-12.

Upon examination of the factual allegations of Plaintiff's pleading, the Court finds that it contains insufficient facts to support a reasonable inference that Defendant Lesher created a religiously hostile work environment. In so holding, the Court does not disagree with Plaintiff that a single incident of religious harassment might be severe enough, or a series of incidents of religious and racial hostility might be viewed collectively, as creating an abusive work environment. Under Title VII, however, "[a]n employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (internal quotations omitted). The effect of offensive remarks must be assessed under an objective standard "from the

9

perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id*. (internal quotation and emphasis omitted).

Here, Plaintiff alleges two discrete incidents in which Defendant Lesher made offensive remarks about her religion or her race during conversations between the two of them. In the Court's view, Defendant Lesher's alleged remarks, while insensitive and boorish, could not reasonably be viewed by a person in Plaintiff's position as creating an abusive working environment that altered the conditions of her employment. Therefore, the Court finds that Plaintiff has failed to state a plausible claim of religious harassment.[7]

**D.     Age Discrimination Claim**

The Department also challenges the sufficiency of Plaintiff's pleading to state a plausible claim that the termination of her employment was based on her age of more than 40 years. The Department argues that Plaintiff's allegations show other employees were similar to her age, and fail to show a discriminatory animus toward older workers. This argument ignores factual allegations that Mr. Lesher expressed a preference for placing younger workers in management positions shortly before he terminated Plaintiff as chief examiner. The Court finds that Plaintiff's factual allegations are minimally sufficient to state a plausible age discrimination claim against the Department.

---

[7] In light of this ruling, the Court need not address the Department's additional basis for dismissal that Plaintiff did not file a timely EEOC charge regarding any religious harassment that occurred in November 2014 because she did not file her charge until November 18, 2015.

**E.     First Amendment Claim**

Plaintiff claims Defendant Lesher caused her to be terminated in retaliation for speech protected by the First Amendment, and seeks damages under 42 U.S.C. § 1983.[8] It is well established that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also Connick v. Myers*, 461 U.S. 138, 147 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Defendant Lesher challenges only whether the factual allegations of Plaintiff's pleading are sufficient to show constitutionally protected speech.[9]

To establish First Amendment protection, a public employee must satisfy the pertinent elements of the *Garcetti/Pickering* test, which in this case are: "'the speech was [not] made pursuant to an employee's official duties; [and] . . . the speech was on a matter of public concern.'" *See Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)); *see also Seifert v. Unified Gov't of Wyandotte Cty./Kan. City*, 779 F.3d 1141, 1151 (10th Cir. 2015). "The

---

[8] Like Plaintiff's § 1981 claim, Defendant Lesher asserts a defense of qualified immunity to the § 1983 claim, but he argues only that Plaintiff's factual allegations are insufficient to show a violation of the First Amendment. *See supra* note 4. Thus, the Court addresses only this issue.

[9] The parties do not address which of two tests governs Plaintiff's First Amendment retaliation claim against Defendant Lester – the "familiar *Garcetti/Pickering* analysis" or "the *Worrell* test" applicable to non-employers. *See Trant v. Oklahoma*, 754 F.3d 1158, 1165, 1169-70 (10th Cir. 2014) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). The parties instead argue only whether Plaintiff's allegations are sufficient to establish an element common to both tests, namely, protected speech. Thus, the Court need not decide at this point which test should apply in this case.

Tenth Circuit's decisions addressing the first step of the *Garcetti/Pickering* analysis 'have taken a broad view of the meaning of speech that is pursuant to an employee's official duties.'" *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008)). The court of appeals "has taken a case by case approach, looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Id*. While "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties," this factor is not dispositive. *See id.* at 747; *see also Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010) ("no one factor is dispositive"). "[T]he proper focus is ultimately still whether the speech stemmed from and was of the type that the employee was paid to do, regardless of the exact role of the individual or entity to which the employee has chosen to speak." *Rohrbough*, 596 F.3d at 747 (internal quotation omitted).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *See Connick*, 461 U.S. at 147-148. "Speech is a matter of public concern if it is of interest to the community, and we focus on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Trant*, 754 F.3d at 1165 (internal quotations and citations omitted); *see Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,

1205 (10th Cir. 2007). "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *See City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).

Accepting the factual allegations of Plaintiff's pleading as true, and viewing them in the light most favorable to her, the Court finds that Plaintiff has sufficiently alleged that she engaged in protected speech. The alleged speech – opposing Defendant Lesher's use of racial slurs and his possible misuse of public funds to pay a female employee money she allegedly had not earned – arguably did not fall within Plaintiff's official duties as chief examiner and addressed matters of public concern. The fact-specific inquiry needed to determine whether Plaintiff's speech was protected by the First Amendment is more appropriate for consideration through summary judgment procedures, after development of a full factual record. Therefore, the Court finds that Plaintiff has stated a plausible claim that Defendant Lesher retaliated against her for protected speech.

**F.** ***Burk* Tort/Whistleblower Claim**

Plaintiff asserts a tort claim against the Department of wrongful discharge in violation of public policy, commonly known as a *Burk* claim (*see supra* note 3). Plaintiff bases this claim on allegations she "performed an act which public policy encouraged when she questioned Lesher regarding the employment of [his suspected paramour] Lundy, . . . [and] consistent with Oklahoma public policy, including but not limited to policy embodied in 21 O.S. § 341 (prohibiting embezzlement by state officers), 21 O.S. § 358 (prohibiting false, fictitious or fraudulent claims for payment against the State) and § 1451 (same)."

*See* Pet. [Doc. No. 1-2], ¶ 61. Plaintiff specifically refers to her claim as one of "retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy." *Id.* ¶ 60.

The Department asserts this claim is governed by the Whistleblower Act, Okla. Stat. tit. 74, § 840-2.5, and its implementing regulations. The Department invokes the holding of the Oklahoma Supreme Court in *Shephard v. CompSource Oklahoma*, 209 P.3d 288, 292-93 (Okla. 2009), that the Act "provide[s] statutory remedies sufficient to protect the Oklahoma public policy goal of protecting employees who report the wrongful governmental activities" and the existence of an adequate remedy for such employees "precludes resort to a tort cause of action to redress a termination in violation of the public policy." The Department further argues that the Act requires Plaintiff to pursue statutory remedies and to exhaust the administrative process through an appeal to the Oklahoma Merit Protection Commission.

In response, Plaintiff argues only that plaintiffs in other cases have been permitted to assert a *Burk* tort claim against Oklahoma agencies or departments based on violations of public policy expressed in anti-discrimination statues or constitutional provisions. *See* Pl.'s Resp. Br. [Doc. No. 15] at 13-15 (discussing *Dixon v. Okla. Bd. of Veterinary Med. Examiners*, No. CIV-06-1003-M, 2009 WL 1473973, \*4 (W.D. Okla. May 26, 2009) (Okla. Stat. tit. 25, §§ 1302, 1402 and tit. 74, §§ 840-2.9, 954); *Newby v. State of Okla. ex rel. Okla. Dep't Public Safety*, No. CIV-10-1153-C, 2011 WL 6883735, \*1 (W.D. Okla.

Dec. 28, 2011) (Okla. Stat. tit. 25, §§ 1302, 1402 and Okla. Const. art. 2, § 22); *Trant v. Okla.*, 874 F. Supp. 2d 1294, 1304 (W.D. Okla. 2012) (Okla. Const. art. 2, § 22).

The Court finds these cases to be inapposite in light of Plaintiff's allegations and citations in support of her *Burk* claim. Plaintiff expressly relies on criminal statutes prohibiting conduct by public officers involving misuses of public funds. Plaintiff also acknowledges in her pleading that the nature of her claim is retaliation against a whistleblower. Under these circumstances, the Court finds that the holding of *Shephard* precludes Plaintiff's assertion of a *Burk* claim against the Department.

## G. Tortious Interference Claims

Defendant Lesher seeks the dismissal of Plaintiff's claims for tortious interference with her employment by the Department and interference with a prospective economic advantage from such employment based on a common proposition: "[A]n agent of a principal cannot be held liable for interfering with a contract between the principal and a third party." *Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998). *See* Def. Lesher's Mot. [Doc. No. 5] at 8-9. Defendant Lesher also relies on cases holding that a supervisor cannot be held liable for disciplining or terminating an employee where "he was 'acting in a representative capacity for Plaintiff's employer.'" *See id.* at 10 (quoting *Batton v. Mashburn*, No. CIV-14-651-R, 2015 WL 2240981, *5 (W.D. Okla. May 12, 2015)).

Plaintiff does not disagree with these general propositions but, instead, argues that an officer or manager of an employer can be held liable for tortiously interfering with an employee's relationship with the employer if he "acts in bad faith and contrary to the

15

interests of the employer."  *See* Pl.'s Resp. Br. [Doc. No. 14] at 12, 15 (citing *Martin*, 975 P.2d at 896).  Plaintiff contends she has alleged sufficient circumstances here because her pleading states Defendant "Lesher acted with ill-motive."  *Id*. at 13 (citing Pet. [Doc. No. 1-2], ¶¶ 18, 50).

Upon examination of Plaintiff's pleading, the Court finds only conclusory allegations of the elements of the asserted causes of action and allegations that Defendant Lesher's actions were unlawful, "willful, wanton," "malicious" and without "justification, excuse or privilege."  *See* Pet. [Doc. No. 1-2], ¶¶ 20, 34, 48, 50.  According to the Oklahoma Supreme Court:  "The fact that [a] Supervisor's decision to terminate [an employee] was contrary to policy prohibiting termination does not alone take that decision outside the scope of [the] Supervisor's employment."  *Shepard*, 209 P.3d at 294.  In this case, the Court finds that Plaintiff has failed to provide sufficient factual allegations to show Defendant Lesher was acting in bad faith and outside the scope of his employment with the Department in deciding to terminate Plaintiff's employment.  Therefore, the Court finds that Plaintiff's pleading fails to state a plausible claim of tortious interference with contractual relations or prospective business advantage.  Plaintiff will have an opportunity to amend her pleading to cure this deficiency, if she can do so consistent with Rule 11, within the time period to be set by the Court's scheduling order.[10]

---

[10] The Tenth Circuit recently held that a tortious interference claim, similar to ones asserted by Plaintiff in this case, may be barred by the exclusive remedy provisions of the OADA.  *See Jones v. Needham*, No. 16-6156, 2017 WL 1959972 (10th Cir. May 12, 2017) (to be published).  Plaintiff should be mindful of this legal development in considering whether to pursue her tort claims against Defendant Lesher.

16

**Conclusion**

For these reasons, the Court finds that Plaintiff has sufficiently stated claims of race discrimination and retaliation, age discrimination against the Department, and First Amendment retaliation against Defendant Lesher. Plaintiff's Title VII claim against the Department of religious discrimination or retaliation (Count III), Plaintiff's claims against Defendant Lesher of tortious interference with a contractual or employment relationship and interference with prospective economic advantage (Counts VI and VII), and Plaintiff's *Burk* tort or whistleblower claim against the Department (Count VIII) are dismissed without prejudice to a future amendment.

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss [Doc. Nos. 5 & 6] are GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 30th day of May, 2017.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE